PETER SLUSKONIS, administrator, *vs.* BOSTON AND MAINE RAILROAD.

Essex.   November 4, 1937. — February 5, 1938.

Present: FIELD, DONAHUE, LUMMUS, QUA, & DOLAN, JJ.

*Evidence*, Presumptions and burden of proof, Admission. *Negligence*, Grade crossing. *Practice, Civil*, Opening statement to jury.

Evidence that a child nearly six years of age was last seen alive ten or fifteen feet from and walking toward a grade crossing of a railroad where the view up the track was obstructed, that signals required by G. L. (Ter. Ed.) c. 160, § 138, were not given, and that he had been struck and killed by a train, warranted a finding that he had been struck by the engine, and did not require a finding that he had walked against the train after it had occupied the crossing.

Counsel's opening statement as to a detail of testimony he expected would be given was not a binding admission of its truth and did not preclude him from introducing testimony to the contrary.

Circumstantial evidence is sufficient to prove that actionable injury was caused by failure to give the signals required by G. L. (Ter. Ed.) c. 160, § 138.

TORT. Writ in the Superior Court dated June 19, 1933.

A verdict for the plaintiff in the sum of $1,210 on the first count of the declaration was returned before *Cox*, J. The defendant alleged exceptions.

*J. DeCourcy*, for the defendant.

*C. A. McCarthy*, for the plaintiff.

QUA, J.  This is an action to recover for the death of the plaintiff's intestate, a girl five years and eleven months of age, at a grade crossing of the defendant's railroad and North Main Street in North Andover on May 11, 1933.

The trial judge directed verdicts for the defendant upon all counts of the plaintiff's declaration except the first count, which was framed upon G. L. (Ter. Ed.) c. 160, § 232, for failure to give the signals required by G. L. (Ter. Ed.) c. 160, § 138.  In answer to special questions the jury found upon sufficient evidence that the signals were not given.  The only exception is to the refusal of the judge to direct a verdict for the defendant on this first count.

As is usual in the trial of disputed issues of fact, the evidence, even that coming from the same witness, is open to varying interpretations, but upon a careful examination of the whole of it from the viewpoint most favorable to the plaintiff we think these facts could have been found:  The accident happened between half past seven and a quarter of eight o'clock.  "It was just growing dim."  There were three tracks at the crossing which ran approximately at right angles to the highway.  The plaintiff's intestate approached the crossing from the north, walking on the sidewalk on the east side of the highway.  The train came from the east.  A person approaching the crossing as the plaintiff's intestate did would have to come within about five feet from the crossing before he could see a train coming from the east "because of all the trees over there."  There was also a "shanty," and there were bushes along the right of way.  There was a curve in the track on that side of the highway.  The deceased was seen walking slowly past a pole about ten or fifteen feet from the crossing.  After that "about a fraction of a second the engine come passing by."  It was a big engine pulling a freight train.  When the train had passed the deceased was no longer in sight.  Her body was found in a "hollow" or "ditch" beside the track.  One witness placed it about twenty feet from the west side of the crossing.  Another placed it approximately

sixty feet and six inches "from the crossing." There was "some brain matter" on the roadbed of the railroad about six feet from the body toward the crossing. The medical examiner testified that there were many broken ribs on both sides of the body; that there were fractures of the left ankle and of the left upper arm; that there were many slight bruises and lacerations on the skull; that the cause of death was a crushing blow to the skull; and that from the appearance of the body it might have been run over by an automobile, but not by a train. No witness testified to having seen the precise manner of contact between the train and the child.

The principal question in the case arises from the defendant's contention that the deceased was not struck by the engine while she was passing over the crossing, but that she walked into the side of the train after the engine had passed her and while the train was already occupying the crossing. The judge instructed the jury without exception that if this was the fact the plaintiff could not recover. This instruction became the law of the trial. *Button* v. *Crowley*, 284 Mass. 308, 313. Doubtless the ruling was based upon a statement in *Bell Cab Co.* v. *New York, New Haven & Hartford Railroad*, 293 Mass. 334, 337. But we think that the jury were not obliged to find that the plaintiff's intestate walked into the side of the train after the train was upon the crossing. It is true that one of the plaintiff's witnesses testified at one time that the deceased stopped by the post waiting for the train as it approached, but he also testified that she kept on walking. This is not a case where the witness definitely chose to stand upon one of two alternatives. *Sullivan* v. *Boston Elevated Railway*, 224 Mass. 405, 406. The effect of his testimony was for the jury. The same witness, who was both on the opposite side of the street and on the opposite side of the train from the deceased, testified that after the engine passed onto the crossing he looked under one of the cars and saw the child's feet go up in the air "just like an airplane taking off." But although the plaintiff called this witness, he was not necessarily bound by his testimony. *Haun* v. *LeGrand*, 268

Mass. 582, 584. *Salem Trust Co.* v. *Deery,* 289 Mass. 431, 435. *Morello* v. *Levakis,* 293 Mass. 450, 452. *Commonwealth* v. *DiStasio,* 297 Mass. 347, 363. The jury could reject it. The rest of the testimony leaves the deceased walking on the sidewalk toward the crossing in a normal way. The jury might think it more likely that she was struck from the left after she came upon the crossing than that she walked straight into a moving freight train which was directly ahead of her in plain sight. They might think it unlikely that if she walked into the side of the train she would have been carried to the place where her body was found, or that if, as the result of walking into the side of the train, she was in some manner carried as far as that she could have escaped being run over.

The statement of the plaintiff's counsel in his opening that witnesses would testify that after the engine went by they saw the child's legs underneath the first freight car for an instant and then saw her legs go up in the air was not as matter of law an admission that she walked into the side of the train. "Openings commonly are not made for the purpose of expressing admissions." *Mercier* v. *Union Street Railway,* 230 Mass. 397, 406. *Kolas* v. *La-Rochelle,* 270 Mass. 49, 53. Counsel may state expected evidence without admitting that all of it or every permissible inference from it is correct.

Under the statute it remained for the plaintiff to show that the neglect to give the signals "contributed to the injury." Of this it was said in *Doyle* v. *Boston & Albany Railroad,* 145 Mass. 386, 387, that "it is plain that we cannot expect, and the statute cannot have meant to require, direct evidence of the connection. The only absolutely direct proof would have to come from the lips of the person killed." Commonly it has been held that this is a matter of inference for the jury. *Copley* v. *New Haven & Northampton Co.* 136 Mass. 6. *Lamoureux* v. *New York, New Haven & Hartford Railroad,* 169 Mass. 338, 339. *Walsh* v. *Boston & Maine Railroad,* 171 Mass. 52, 58. *Creeley* v. *Boston & Maine Railroad,* 263 Mass. 529, 532.

No contention has been, or properly could be, made that

the defendant had sustained the burden of proving the defences specified in the statute that the infant deceased was guilty of gross or wilful negligence or was acting in violation of law. *Klegerman* v. *New York, New Haven & Hartford Railroad,* 290 Mass. 268, 274.

*Exceptions overruled.*